The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons have any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit. I admise to give their attention, for the Court is now sitting. Good morning. Good morning, Your Honor. Good morning, Mayor. Mr. Ross, you may proceed. May I please report? If you ask five different people for a legal opinion, in many cases, maybe even most cases, you're going to get five different answers. Not so in this case. James Nathaniel Bryant murdered Corporal Dennis Leiden of the Horry County Police Department on June 5, 2000. He beat him unconscious with a steel flashlight, he took his service weapon, and he executed him on the side of the road. Mr. Bryant's guilt is not in question, and a jury of his peers sentenced him to death. At his trial, the issue of one juror's hearing impairment was repeatedly and thoroughly examined. Mr. Ross, if I could interrupt you before we get too far into the meat of things. This is Judge Agee. I'm not on the phone, not up on the screen. I wanted to ask you a preliminary question about one of the issues in the supplemental briefing that the Court asked the parties to address, which was whether the doctrine of invited error would bar Mr. Bryant's claims here. As Mr. Bryant points out, it does not appear that the State raised that point below or even in the appellate briefing here. So my question is, have you waived that claim? And if you have, does the Court have any authority to consider it sua sponte? Your Honor, we have not waived the claim, and the Court does have the authority to address it on its own sua sponte. And the precedent for doing that is Wilson v. Lindler. That was a case from the Fourth Circuit, 995 Federal 2nd at 1262. That was the panel opinion that explicitly stated that the Court was raising invited error doctrine on its own without the State having raised it below at the district court level. That was affirmed by the en banc court in Wilson v. Lindler as well. Counsel, it's Judge Harris. Can I ask you, in that case, this is sort of an unusual case in that both the government and the defense effectively invited this error. The government withdrew its request to remove this juror. So in the case you were talking about, had both parties sort of participated in getting this error unexamined? Yes, in Wilson, that was precisely what happened. You had the solicitor in that case and the defense attorney discussing what were the appropriate jury charges to go to the jury. He was charged with burglary second degree. And in South Carolina, he can get to burglary second degree two different ways. Now, the State only charged one way initially in the indictment in Lindler. And the parties discussed what would be the appropriate jury charge. Mr. Ross, this is Judge Diaz here. Was Wilson a direct appeal or a post-conviction case? It was a post-conviction case. I'm sorry, I didn't hear that. What did you say? It was a post-conviction case that this court was reviewing on federal habeas under 2250. It was not a direct appeal. The court addressed the issue on its own. And for good reason, because the Invited Error Doctrine is not just an issue of state law. It is a federal doctrine that's recognized throughout the country and in this court as well. Mr. Bryant noted in his supplemental response brief that the Invited Error Doctrine is a state procedural rule. And as such, the state had a duty to raise it below. But this court has explicitly held in another case, Yeats v. Angelone, which Mr. Bryant cited in his brief, that there are issues that transcend the particular issues of the parties. Those issues are- Right, right. So, Mr. Ross, wouldn't the prosecution agree that the integrity of the judicial system and justice is such an issue that transcends Invited Error and should be an exception, particularly in this case where the prosecution recognized that this juror could not hear all of the evidence? I would disagree with that factual assessment. The solicitor, at the end of the day, flat out said this juror was- Okay, at the end of the day, what did the solicitor say four times before the solicitor said, oh, well, it's good enough, nothing to see here? Didn't the solicitor say four different times this juror cannot hear? The solicitor is noting what he feels are concerns. He also testified at the bar that after deliberating on the issue- and recall, this was a matter that went over the course of several different days. After deliberating on the issue, he didn't think his objection had merit, that he realized in looking at the standard that you don't have to be a perfect person to sit on the jury. You can even be blind. So how much of the evidence could a juror not hear because she was deaf in a death case in deciding whether to sentence somebody to death? How much does the state, does the prosecution think, is enough for that juror to hear? 51% of the evidence? First off, I note the Supreme Court hasn't identified a standard to separate- I'm asking you, I'm asking what the prosecution thinks would be just here. What I think is just is how the PCR court analyzed the issue. Is there a showing that this juror missed material testimony? Tell me, Mr. Ross, how does someone know what they have not heard? This particular juror can use not just her ears, but also her eyes. How does the prosecution know what she didn't hear? How much did she hear? I'm sorry? How much of the guilt phase did she hear? She heard material testimony. How much? How much did she hear of the material testimony? Actually, how much of the material testimony did she miss? How much did she miss? She did not miss any material testimony. How do you know that? Because we asked the juror directly. The juror was asked at any point, did you turn your attention away and then realize you hadn't turned it back fast enough? And she was asked, well, at that point, do you think you missed anything? And she said, well, at one point, I thought maybe. She says she may. Here's what the solicitor actually said. She's admitted that she may have missed evidence at the guilt and at the penalty phase. Your Honor asked her about this blue dress, and I think this is the solicitor. I think clearly she's not catching everything and should be removed. So how much is enough for somebody to hear at the penalty phase or to miss? Fifty-one percent of the evidence? Is that what the state thinks? That's a quantitative standard, Your Honor. I think material testimony is an appropriate standard. Okay, and how much of the material evidence at the death penalty phase did she miss? She missed no material testimony, Your Honor. That was her word, and there has been nothing to dismiss. Okay, I'll find the transcript and read it to you here in a little bit, but somebody else might have questions. Let me ask you this, counsel. Isn't the state of her hearing and how much the juror heard a factual question? Absolutely, Your Honor. I mean, it's something for the PCR court. Well, it's something initial for the trial judge to monitor, but this kind of thing is made for a PCR court rather than a federal appellate tribunal, is it not? Your Honor, I would say that there are two levels of deference involved here. You have deference to the trial judge's decision there on the spot. The law recognizes that the trial judge is in the best position to assess juror qualifications, and that's for good reason. The trial judge can see and hear things that don't make it. But all I'm saying is that the state of her hearing and the degree of her comprehension and the rest, I wonder why that's not a question that's intensely factual in nature and would have to be subject at a minimum to a clear and convincing standard to have it overturned. I mean, the question I have here is whether or not we are going way beyond what our proper role is. You're absolutely right, Your Honor. It is an inherently factual inquiry. Again, the law recognizes that the trial judge is in the best position to do that. The law also recognizes that there's double deference involved when you're under 2254B. So tell me a little bit about the PCR hearing. Was the juror called in? The juror was in the courtroom. She had a subpoena in her hand. She did not testify for whatever reason. Instead, Mr. Bryant called the juror's husband, and the husband provided some anecdotal evidence to support his claim. Mr. Bryant was also given the opportunity, and he offered an affidavit from a family physician on the issue. He didn't present any objective metrics at that PCR hearing. He did not come into court with anything saying, this juror can only hear X number of decibels or hearing is X percentage below the national standard. Mr. Ross, can I ask a question? This is Judge Diaz. You were asked by Judge Stacker what the state believed to have been the amount of material testimony that the juror may have missed. But whose burden was it at the PCR court level to make a showing as to whether or not the juror missed material testimony? It's always the applicant's burden to prove his case in PCR. So Mr. Bryant had the burden to show that material testimony was missed. That's just a fundamental burden of proof in any PCR that you have in our state. And he simply failed to meet his burden. He was given the opportunity to present evidence, and he didn't present sufficient evidence to show material testimony was missed. And he could have done that. He could have shown, Mr. Bryant could have shown this juror missed material testimony. He could have shown that at trial when the juror said, yeah, there was one moment where I looked away. And then when I returned my attention, it took me a second, and then I realized I was following along. Mr. Ross, I still don't understand how, what that proof would have been. I mean, her doctor said she's deaf. She indicated multiple times during trial that she could not hear some of the testimony. And the solicitor, in fact, said at trial, I don't think there's any way to establish with absolute certainty how much she's hearing. She is not saying she couldn't hear anything. She's repeatedly asked, are you getting everything? And she's repeatedly telling the judge, yes, ma'am, I'm hearing everything. He indicated that. You think she repeatedly told the judge she was hearing everything? Periodically through that trial, the judge is asking her, ma'am, are you catching everything? She's saying, yes, ma'am, I am. The judge followed up with the result. You're leaving out some pieces of that transcript, I think, when you're saying that she said every time that she heard everything. You're not saying that, are you? She's repeatedly asked, are you hearing all of this? Wait, were there times that she said she missed evidence during the trial? At the end, and, John, let me explain. At the end of the final colloquy with that juror, she's saying at one point she turned her head away and she turned her face. And she admits, yes, she might have missed some testimony, but I thought... Are you saying that she only said one time that she missed testimony? At that final colloquy, at the... Okay, one time at the end, but I'm talking about throughout the trial, she indicated, there were indications she wasn't hearing things, correct? That she was reading lips or trying to read lips, that she had missed things. I am following along. I can read lips. At one point, the defense attorneys actually pick up the podium and move it closer to the juror so she could actually ensure she could see. Yes, Your Honor. Counsel, can I give you a chance to just address... I mean, there are many troubling parts of the transcript, but the part that troubled me maybe most is when the judge is talking to the juror, you know, face-to-face, a few feet away, and raising her voice. And the juror still can't follow what she's saying. And so the judge says, I'm noting she's indicated she just flat did not hear, and I was looking directly at her and talking. And even now, she's having difficulty hearing me, and I'm raising my voice, and there's been a lot quieter voices than mine during the trial. What should I make of that? The judge is a few feet away from her, raising, the judge is raising her voice, and the judge says she still can't follow what I'm saying. Your Honor, what I would ask is how many lawyers come into this very court and have to ask a judge to repeat themselves? It happens all the time. But very rarely does the judge then say, oh, wait a minute, I have a serious concern that this person cannot follow the testimony in this trial. That is very rarely the follow-up, but it was here, when the judge says, there have been a lot quieter voices than mine during this trial. That is very rare in my experience as a judge. And I can tell you, when a judge calls you on the carpet, isolates you from the remaining jury panel, puts you on the spot, and asks you a question, you may look the judge directly in the eye. You may know that there are words coming out of the judge's mouth, but your mind is going a million miles ahead of thinking about something else. And I'm sure that's... Mr. Ross, can I follow up on that? So the question is whether, and that is admittedly somewhat troubling, but you can't take that comment in isolation. You have to take the entire interaction of the juror throughout the proceedings. And I think as you pointed out, jurors by nature are very nervous when they come into a courtroom. Early on in the proceedings, there was some confusion on the part of the juror when she was being asked about the burden of proof and those kinds of things. And I don't find that to be, you know, at all unusual for a juror. The question is whether taking the transcript as a whole in context, there's been a showing that she missed material parts of the testimony. At one point, you seem to be arguing that she missed nothing. I don't think that's accurate, but the question is whether or not she missed so much that she wasn't functioning as the kind of juror that the Constitution requires. And at least on this record, you know, whether or not the PCR court's findings were as complete as we would want them to be, the question is whether or not the evidence supports a finding that the juror missed material parts of the testimony. Isn't that right? Yes, Your Honor, that's right. Just that instance with the jury is one piece of evidence in Mr. Bryant's favor. It is not enough. It is not a smoking gun that can show a contrary conclusion reached by the PCR court. I mean, you know there's more than one piece of evidence on the fact that she can't hear or could not hear some of this testimony. I just, what is your response to the solicitor saying at the guilt phase, I don't think there's any way to establish with absolute certainty how much she's hearing. Is it the prosecution's position that that is not a problem in this death penalty case at the guilt phase? I think you can prove how much she has to get paid. How? You call her to the stand. Other than to bring a doctor in and say, her doctor in and say she's deaf. Her husband said she's deaf. She said throughout the trial she couldn't hear at points. The solicitor repeatedly was concerned that she could not hear. And the judge said in the guilt phase she just flat out could not hear me. So how is it? Put her on the stand. Ask her what she remembers from the case. And remember, in this particular case, Mr. Bryant called witness after witness after witness after witness in mitigation. They are all hitting nearly identical themes in mitigation. You could ask that juror, what do you recall from Mr. Bryant's case? Okay, so she only needed to hear one of the witnesses because they all said the same thing? That is not what I'm saying. I'm saying Mr. Bryant could have made his case. He didn't call the witness. This is not an impossible task. It gets much more difficult the longer you wait. He could have done it right there on the spot at trial and asked the juror, hey, who was testifying when you turned your attention away? He could have put her on the stand at PCR. Mr. Ross, may I ask you a question? Yes, sir. We know that defense counsel didn't want to get rid of this juror. I mean, that's beyond prevention. There's no question about that. So we know why that policing didn't happen. But isn't there a question in follow-up in terms of what Judge Hatch was asking about? At a point where, and Judge Diaz, too, I think the question is that a juror can be so intrinsically incompetent. And I don't mean that in a pejorative sense. But that she's not qualified to be a juror. It's not a matter of trying to question her about how much you heard about each witness. For example, 15 mitigating witnesses had testified when she went through the person wearing a blue shirt, please stand up. There's a question whether or not somebody nudged her. But then after you had 30, then another test. How many cases do you have a judge trying to find the physician to see whether or not a juror is qualified? It's just too important, particularly in a death case, to try to hang on to a juror that the record has established has a serious problem with hearing. That's what I'm talking about. The counsel clearly wanted them. But you can't get together and decide that the Sixth Amendment doesn't matter in terms of a juror in a death case. Can you answer that? Isn't there something that's important about a juror or each of them to be qualified? Mr. Bryant is in control of his own destiny. It was not just his attorney. He's not in control of the Constitution. You can't. And there's something about he's trying to control the Constitution in the sense that a juror speaks about our society, a rule of law under the Sixth Amendment. It's not just, well, because they came out and said, well, we have decided that she heard enough. Well, how could they have possibly gone into a bench conference and in there the three of them decided she heard enough? What did they do? They had no tapes. They basically, you know, and the solicitor was definitely saying she should go, but then somehow capitulated. But isn't there something higher than either of them posturing whether or not it is strategically to their advantage or not about a juror's importance to be qualified? Mr. Bryant could have waived his right to all of those. He has a right to waive 12. He can waive any objections to one. Mr. Bryant saw that juror in court, saw her ability to convey with the judge, and he wanted her on the jury. And there was good reason that he wanted that person on the jury because one thing that's been overlooked, and I see my time has run out. Please follow what you say is a good reason why. Go ahead. One reason that was overlooked by the district court was that this particular juror during Ward Dyer stated she had a family member who was serving prison time for killing somebody. So right out of the gate, she's going to be inclined to support his position. She's going to be inclined to look at the family members of Mr. Bryant that came in and testified and empathize with where they're coming from. So at the end of the day, Mr. Bryant had the right to go forward with this juror, and he exercised that right. And everybody else agreed at the end of the day, although they noted some concerns, she was qualified. I see my time has expired. At this point, is there any juror, any judge who has not asked a question, would like to ask a question now? Hearing none. All right. Thank you very much, Mr. Roth. Yes, sir. Ms. Vann. Morning. May it please the court. I'm Lindsay Vann, representing James Bryant in this capital habeas case. The state PCR court denied Bryant's fair trial claim based on unreasonable findings of fact directly contrary to or against the weight of the evidence in the state post-conviction record. The PCR court's findings that juror 342 heard all the guilt-based testimony, was able to compensate for her hearing deficiencies, and heard all material evidence were unreasonable. The state court record is replete with evidence, including the juror's own admission that she missed testimony at both phases of the trial. Throughout the trial, the judge and the solicitor repeatedly recognized that the juror was missing portions of the testimony. She could not hear the judge when the judge was speaking directly to her, and that the lip reading and hand signal accommodations were simply not working. Contrary to the state court findings, the record demonstrates juror 342 was not able to carry out her duties as a juror because she could not hear or understand the evidence or the law, and could not participate fully in the deliberations. The jury's death verdict on the basis of this juror's vote violated… Ms. Vann, Mr. Roth says that Mr. Bryant did not meet his burden at the PCR hearing. What's your response to that? That is simply not true. At the PCR hearing, he called the juror's husband, who was able to testify about her hearing difficulties that dated back to 1984, well in advance of the trial of this case, and provided some explanation for why she would not be forthcoming about her hearing incompetencies at the trial. He said that she became furious when people would suggest that she needed help with her hearing. And, as you mentioned, they presented an affidavit from her doctor who said that he found her to be deaf and that she should not have served on the trial without appropriate accommodations. But I think, really, the state trial record provides the best evidence of this juror's hearing incompetencies. Throughout the entire trial, the judge and the solicitor are going back and forth with their concerns over the fact… Let me ask the question. He chose not to call the actual juror at the hearing. Was that a strategic decision, or was it something that the law brought out in the South Carolina law? Well, South Carolina has Rule 606, much like the federal rule. There's not a direct case on this point under South Carolina law, but the U.S. Supreme Court in the Turner case found that a juror's testimony about incompetencies like this are not appropriate under Rule 606. And so I think there would have been an objection to her testifying about her abilities at the trial. But even if she did testify, she would not be able to clearly… As Judge Thacker pointed out, she heard what she heard, and that's what the trial judge said throughout the course of the trial. The solicitor said there's no way for her to tell us what she's heard and what she's not heard, especially after the passage of time between the trial and the PCR hearing. So do we confront a factual question here? Typically, in many cases where we're dealing with the facts, we look to the facts in terms of whether there's clear error or some lesser standard, and then in terms of sufficiency on a legal basis. But here, the question is whether there were material facts, and the court did make a determination that there was not a sufficient showing. So what are we reviewing? Are we reviewing the facts? Are we reviewing the sufficiency of the showing? Which then may lead into some of the earlier questions as to how much is enough. Otherwise, we're dealing with a factual question, and the burden being on the defendant here, we may not even get to the sufficiency. Well, the question before this court is whether the state court, the PCR court findings, factual findings, were unreasonable under 2254D. Those facts are factual findings. There were only four of them that the juror testified she heard all the guilt-based testimony, which she… Well, I'm just asking in that regard, does the question of sufficiency come into play in determining unreasonableness? Are you speaking directly to the finding that there wasn't a sufficient showing that she missed material evidence? Beyond it, what she actually found in terms of that, but I'm thinking in terms of if we're looking at a witness who it appears as though there's some indication she says, I missed some evidence. We don't know what it is. The burden is on the defendant to say what it is. So we don't know, and I don't know how you would find out. You'd have to go through the whole trial transcript and probably say, did you get that? Did you get this? I just can't even conceive how it's done. But my question goes to in determining whether it is unreasonable, do we look to determine a question of sufficiency? And if we do, who has that burden of showing the sufficiency of it? Well, I think to step back, I don't think there's no requirement under the Supreme Court law that there be a showing of exactly what the juror missed. As Judge Gregory pointed out, there can be a juror that is just incompetent to serve, and the requirement under the Supreme Court law is that the juror be able to render a decision based on the evidence at trial. And looking at the record as a whole, it's clear that she is unable to hear even when the judge is speaking directly to her and raising her voice. Certainly, a hearing impaired juror could sit on the trial, but they have to have some sort of accommodation to allow them to hear or understand the evidence. Counsel, I'm still puzzled as to the absence of the juror in the PCR hearing, because I think that the juror herself would have been a highly relevant evidence. You say there was a barrier under South Carolina law to poking into jury deliberations, but did the PCR counsel or the defendant try to get the evidence or the juror's testimony in so that the PCR court could have some sense of what the state of her hearing was? Was there an attempt on the part of PCR counsel to introduce her as evidence? This is not necessarily plumbing internal jury deliberations. I'm trying to gauge what the state of her hearing might be, but I wonder whether there was any effort made to produce her testimony. No, the only thing that is in the record is that she was there, but there was not an attempt by PCR counsel to submit her as a witness or her testimony. Instead, PCR counsel, I think reasonably and in a showing of what her hearing capabilities were, presented her husband, who had experience with her hearing. But wouldn't that testimony have been highly relevant, to say the least? No, I don't think so. I think that the juror would not have been able, as Judge Wynn pointed out, would not have been able to go through the transcript and kind of figure out what she heard or what maybe she didn't remember after the passage of time before the PCR hearing. I just don't know how a juror can tell you what she's heard versus what she hasn't heard. As the trial judge pointed out, she's heard what she's heard, and she doesn't know what she's missing. There's no way for her to provide that testimony. Let me ask you something. It seems to me that if she's called to testify and she's questioned, just the very fact of questioning and answering questions would be indicative of her ability to hear. As you know, this record contains all that Judge Thacker pointed out and Judge Harris. It has those comments, but what is not spoken is there were numerous times where the judge and juror 342 communicated extensively. Eight, 10, 12 questions, and they're going back and forth, and she's answering the questions, and the judge is asking questions, and there was no indication in the record that any of those conversations caused her difficulty. They're quoted in the panel opinion, but I was just counting one of them with nine questions back and forth. Another one was eight questions back and forth. She answered them all, so the question is if she's in the courtroom. She was obviously called to the courtroom, probably. Her husband, I suppose, could have come alone, and she takes the stand and is able to answer questions. That would have been indicative of something, or if she were not able to answer questions, but that's left to be a mystery at this point. I mean, we don't have to go to the substance. It would be helpful, of course, to inquire about the materiality or the importance of certain types of testimony. I'm not sure she would be able to recollect specific testimony, but I would think she would certainly be able to recall facts that may have been presented at trial, major facts, but that's a big short fall, and here you have every single judge and participant saying, in the end, it was probably okay. There are problems there. There are problems there, but it comes down to this factual question on the record, which each judge can ask about a particular exchange with the judge, and it goes one way or the other, but we're a federal court looking at a state proceeding, and so the question, I think, is appropriate. The burden is pretty heavy, isn't it, in this circumstance? I think there are a couple of questions there, but to the question of could you bring her in to just have her interact with the judge and see how that goes at PCR? Well, I wouldn't say that would be the primary goal, but that would certainly be indicative, wouldn't it? Well, that is what happened at trial, and I disagree with the reading of the record that she was able to carry on a conversation with the judge. Many of those questions are the judge following up with her because she's clearly not understanding. Without taking up all your time in the court's time, I'm looking at page 136, and it starts with a question from the judge. A juror says, yes, ma'am, and the judge asks another question. He says, just one point. I thought I missed a little, but I didn't. I thought about it. The judge says, you're missing anything? No, ma'am. Keeps going. No, ma'am. I may have missed a little, but just a little bit. Okay. All right. Did you miss some in the phase? Yes, ma'am. Do you think? Yes, ma'am. Did you find in that same situation? She goes down. This dialogue is going on, and she's not saying, I can't hear you, judge. And there's another dialogue of similar length on the same page in the second column. I'm not saying we have to make a finding on that. What I'm suggesting is the record provides evidence to the contrary of those questions that have been put in place before the court earlier. And it seems to me that the task in this whole setup is to let the state make a call on that. And unless the state was totally off the wall, it seems to me that our role is quite reduced in this kind of context, isn't it? Well, yes, there has to be a difference to the state court. But the state court's findings are simply unreasonable on this point. And the colloquy that you just shared, she's admitting that she's missed some of the testimony at the phases. She says she may have missed some. And she turned away, and she may have missed some. I mentioned, did you hear? And then she's asked about the guilt phase. Oh, I got it all. I may have missed something here. I mean, the fact is, she said, I turned away once. These are all incidental. But my point isn't the substance. My point is, she's engaging in an ongoing conversation with the judge without difficulty. She didn't say, I didn't hear you, ma'am. Could you repeat that, ma'am? She's answering the questions. And she's responding substantively to the question that the judge is asking. Now, how do we account for that testimony? I mean, that record portions. And it's not just isolated. It's again, and again, and again, every time the judge raises the point. As a matter of fact, she passed two of the tests. The judge asked her a question. She missed the one on the blue dress. She had a dark blue dress with polka dots. And she didn't. But quite apart from it, we don't need to argue the evidence. Because the evidence is clearly mixed. There's no question about it. My only point is, the PCR court had her in the courtroom. They could have called her. We could have found out a little bit more about her. And it wasn't done. And so the question is, who carries the risk of failing to carry the burden of showing that it was prejudicial, it was material? Well, certainly at a PCR hearing, the petitioner has the burden. But I submit that that has been satisfied here. Ms. Vann, wasn't there evidence at the PCR hearing as to why she would not have admitted that she could not hear? Yes, Judge Thacker. The husband said that she was very sensitive about her hearing problems and would get angry when someone would suggest that she needed assistance with her hearing. And we see that play out time and again at the trial. Eventually she admits that she missed some of the testimony, but never during the course of the trial did she take advantage of the accommodation of raising her hand. So let me ask you, I think Judge Niemann was right when he pointed out that probably the biggest hurdle here is whether you satisfied this burden. And the question of whether the PCR or the defendant could have called this juror seems to be central. And there is Rule 606B. And then there's the Tanner decision that seems to indicate that because this is an internal matter, you couldn't call this juror. And yet intuitively she's the one that it would seem to me would have some pretty strong indication of what she heard and didn't hear. And I don't know if I've seen that question before come up as to, and that's the only part of this case that's beginning to really trouble me a bit, and that is not calling her. And was it a matter of choice, strategic choice by the counsel, or was it something that Rule 606B read under the understanding of Tanner, the Supreme Court case, would say you can't call that witness. And, you know, because neither you called nor the PCR court called nor the solicitor in the case, and this is a death penalty case. And while we want to hang our hats on procedural rules and things, I'm beginning to have a little troubling spirit in terms of a death penalty case, and you're asking this question, and nobody calls this witness. And the only conclusion I'm coming to is you must not have been able to call her because I wouldn't see why you wouldn't call her. Somebody would call this woman up at this hearing. And I think Judge Niemeyer is right that that's critical that she wasn't called. I'm interested in why was she not called. Was it strategic or was it something, and even though the burden's on you, it seems to me in a fairness inquiry in a death penalty case, somebody would want to know was this woman able to hear. I don't think the court can just sit on his hands and say, you know, she's okay, but Judge Niemeyer has pointed to testimony in the record, but I'm talking about the PCR court and dealing with it. It just seems to me she's one of those witnesses you would want to hear from. How does that play out? And I think that's just critical in this case. I think the TANF case is very clear on this point, that where juror impairment is a question, that juror testimony is not admissible under 6060, that it is internal to the jury deliberations. So let me ask you this. If that's so, then how is it you were able to consider that testimony on page 136 where she's talking? I mean, I know that's at the trial, but it's kind of the same thing. She's talking about internal affairs. I don't understand TANF, and I'm not sure if this is a matter. I haven't seen it. I don't know if any other cases are on it. Do you know the other cases on it? Or is this a matter of first impression for us dealing with whether, and I guess South Carolina law may impact it to some degree, but we're talking about the federal rules, 606B in the TANF case. TANF actually speaks directly to this. It says that after the verdict is rendered, it's not appropriate for the jurors to testify about juror impairment. But during the course of the trial, there are a number of things that are supposed to ferret out juror impairment, including the juror's own testimony or the trial judge's observations. And that gets back to the trial. So let me ask you on that. If we made a decision that, yes, you could call this witness, this juror, and send it back just for a consideration of her testimony, is that permissible in lieu of a full re-sentencing? I'm not sure if it would be appropriate to send it back, and I don't think it's necessary. The trial record provides sufficient information to demonstrate that the PCR court's findings were unreasonable. Okay, let me make sure you understand what I'm asking. On one hand, I'm saying, do you maintain that the law did not allow this witness to be called? That is not decided under South Carolina law. I understand that. It may not be under South Carolina law, but I'm dealing with Tanner and I'm dealing with 606B. Was that the basis for not calling this witness? I don't know. The record is silent on why they did not call the witness. This is Judge King. I thought you said earlier that she wasn't called because of this 606 privilege. No, I'm sorry if I misspoke. I meant to say that that was a possible reason that she was not called. The record is silent. Does South Carolina have the same rule? Yes, it is the same rule. Has South Carolina construed that rule? It has construed that rule, but not in the circumstance of an impaired juror. The case, I think, is close to some point as the Tanner case addressing the federal rule. I'm talking about South Carolina law. No, Your Honor. The South Carolina Supreme Court has not addressed in this particular situation. Judge Paul Obama, I'm sorry if I cut you off. No, thank you. I appreciate you answering that. And I think your clarification is the point I was getting at. I mean, we've in the course of this oral argument talked about perhaps the juror wasn't called because of legal impediments. And there's also the possibility that there may be a strategic reason. But the fact of the matter is there's nothing in the record that tells us for sure. And there's certainly nothing in the record that suggests Mr. Bryant attempted to call her and was precluded because of either Tanner or Rule 606. Isn't that correct? That is correct. Yes, Your Honor. Thank you. Ms. Van, could you speak? Go ahead, Judge King. I wanted to, if you were going to follow up on that, Judge Thacker, you go ahead. I was going to try to get her position on this invited error doctrine. Yes, it's our position that that is a procedural bar that was not invoked by the state court. The state court addressed this claim on the merits, and that should be sufficient to raise this as a claim that is available for review under 2254 D by this court. And the state never raised invited error as a procedural bar, not before the state court, not before the district court, not before the panel of this court. And it was first raised, invited error was first used in connection with the in-bank proceedings. Correct? Yes, Your Honor. And it was raised by our court rather than any lawyers. Yes, that's correct. It was not raised by any of the parties. And so it simply should not apply to bar release, especially in a capital case where the, the defendant's right to a fair trial is that issue and where the evidence shows that there was an impaired juror who was seated on the trial that made the determination of the death verdict. Okay. Can you speak to the district court's alternative ruling about ineffective assistance of the defense counsel and not objecting to having this impaired juror continue on the trial? Sure. We also raised an ineffective assistance of counsel claim that it was not a reasonable strategic decision by trial counsel to keep her on the jury. It simply, if they wanted to keep her in the hopes that she would be a holdout, she would not, she wasn't hearing the evidence. And so for her to be able to rely on her to be the person to vote for a life sentence was simply unreasonable. And looking at the reasons that the state PCR court relied on was that he didn't like the- Counsel, let me interrupt you. Why do you say it was unreasonable? Which sort of goes back to the invited error. I mean, counsel was well aware of for all the reasons that have been discussed today of hearing difficulties for this juror. The defendant was certainly aware of it. The court asked him about it on the record, and they thought this was a good juror for them. Why wasn't that decision reasonable for them to make? It was unreasonable because the trial counsel really was acting out of kind of willful blindness to the evidence that was before him. And all of the interactions between the juror and the judge. Why do you say it was willful blindness? I mean, did they have lots of dialogue back and forth with the solicitor and the trial judge about this? And as I just mentioned, they had a consultation with the defendant. The defendant answered on the record. They knew exactly what their potential problem was, but they thought that was a good thing for them. Why wasn't that reasonable? Well, the trial counsel is going through and saying, well, maybe she thought the dress was black, not blue. And then she comes back and answers that specific question saying, no, I knew I was wearing blue. I just simply didn't hear. And then the judge makes the finding on the record that she just flat out did not. I don't think you're answering, excuse me. I don't think you're answering Judge Agee's point, which I thought was a very good one that all along during these proceedings, I suppose initially at voir dire and jury selection, but then during the course of the trial, as Judge Agee points out, any hearing impediment as such there was, was going to be evident. And yet, was there any attempt made to either strike the juror as part of a peremptory or to have a mistrial declared or whatever? Because the danger here is that as Judge Agee points out, you think somebody's going to be a good for your side. And strategically what you're doing is you're foregoing any attempt to excuse or disqualify the juror. And if the verdict turns out adversely to you, you've got in your hip pocket a claim for collateral review to bring up before us here. And why isn't this just a classic case of sandbagging? To let the trial go along with the same problem that's right before us here, make no attempt to disqualify the juror, to strike the juror, to declare mistrial or anything. And then all of a sudden, whoops, the verdict wasn't what we wanted. We've got this impaired hearing, juror claim. It just looks like, as I say, I repeat myself, but it looks like a sandbag to me. In addition to all the problems with the standard of review, we're seeming to whipsaw state judges and state trial judges with this kind of hearing, with a ruling that vindicates this claim in a collateral context. That's my problem, is it just seems to me to lend itself to manipulating the system where you go through an entire trial without raising a problem. And then all of a sudden, Oh, we've got this terrible injustice that we're going to raise on collateral review. And I think that's what judge is holding in on. And I think he's absolutely right about that. And I'll give you another chance to answer his question, but I don't think you did. Well, I think that assumes that the only person who's responsible for protecting the constitutional right to a fair trial is the defense attorney. And that is not the case. The standard case is clear that the trial judge has a responsibility to be observing and to protect the defendant's right to a fair trial and to a competent jury that can render a verdict based on the evidence. And instead we have the trial judge basically abdicating her role, even after finding that the juror was not able to hear even under ideal circumstances when the trial itself has been much less than ideal. Can I follow up on that? You said advocating their role, but you know, they did go back and forth on this for a while. And one of the points that was made, and I think both lawyers may have made it is that, you know, we, we, we don't demand perfection from, from a juror. And they made the point that throughout the course of a hearing, particularly a long trial, it's inevitable that a juror is going to miss something along the way. And, and they sort of analogize the situation with this juror to that for a variety of reasons, a juror is simply not going to catch everything. And as Judge Agee pointed out and Judge Wilkinson pointed out, the defense lawyer in this case was adamant that the jury may not be perfect. There may be some issues here, but we want to keep her for their own strategic reasons. And I guess it gets back to the question that Judge Agee asked. And in that context, in the context of the fact that we don't demand and can't expect perfection, why isn't that a reasonable strategy? Well, I agree that we can't demand perfection, but this is much more than just the average distraction by any juror. There is, it's clear in the record that even when she's trying to listen to the judge, she's speaking directly to her. She says she's trying to read the judge's lips and she simply did not hear the request to stand if she was wearing blue. I see that my time's up. You may finish answering Judge Diaz's question. Thank you, Your Honor. Even under the ideal circumstances where the judge is speaking up and she's looking directly at the juror, there's no back and forth of the chaos of, you know, how a trial actually goes on. She's still not able to hear that question. And that demonstrates that even when she's trying to pay as much attention as she can, she simply cannot do it. And so that makes her, you know, missing much more than what the average juror would miss just in lapses of attention. Does any other judge who has not asked a question like to ask one now? I think there's rebuttal, isn't there? Yeah, there will be. Yes. Thank you, Ms. Vann. Thank you, Your Honor. Mr. Ross, you have some time reserved. Thank you, Your Honor. If I could please talk about the ineffective assistance of counsel claim that was raised. And I think the district court's fundamental failing is that it looked at counsel's performance through the lens of hindsight. Strickland is clear that you don't do that. You have to look at counsel's performance based on the situation he faced there in the trenches. And this trial attorney essentially had three options at his disposal. Best case scenario is he wins his case that day. He has got a jury that, or jury, juror that he believes is favorable to his position. And he makes his case and he gets the sentence he wants. Middle case scenario is... Is there evidence of what you're saying or you're just speculating? I'm sorry, Your Honor? You said that he had a case that was favorable to him, so he was interested in keeping her on. Is there evidence to support what you're saying in this record, or are you speculating? The evidence that supports that is during Vora Dyer, she indicated that she had a relative that was serving prison time. The defense offered tons of family members. She's going to be inclined to view the evidence from their perspective to sympathize with those family members. So there is evidence in the record showing that this, not only did this attorney want that juror, but there's evidence to support that attorney. Mr. Rawls... Did the juror ever testify? Yes, Your Honor, he did testify. Pardon? He did testify at PCR. Did he say what you said? No. He did not reference that particular fact. For that particular fact, I don't think you would need trial counsel to explain the significance of a juror. What did he say when he testified? He said his primary concern was he didn't particularly care for the alternate. And that shows that he has, at that point in time, he's got a duty to avoid the worst-case scenario. And the worst-case scenario from his position is to replace a favorable juror with an unfavorable juror with that alternate. A mistrial is not assured. A mistrial in South Carolina and in federal courts as well is an extreme remedy. Did he say that he thought that the judge was going to remove her based on the conversations with the solicitor, who clearly was concerned about her not being able to hear? Did he say that at one point in his testimony? He speculated that he thought that... So, yes. He also testified that there was never a formal request, that he didn't request that. Right, but he did say that. Did he also say that that juror never should have been on the jury because she couldn't hear? Okay. He fell on the sword, basically. What he testified to was he didn't realize the impairment until after he read the transcript. That's at 1074 and 1083. So that tends to suggest that what he's reading in the transcript appears worse than what he saw, appears worse than what the prosecutor, the judge, the other defense attorney, and Mr. Bryant saw. That just reinforces... Mr. Ross, can I... Mr. Ross. I'm sorry. Go ahead, Judge Quattlebaum. Sorry. So, I have a question about what we can consider in this ineffective assistance issue. You talked about the information from Vore Dyer that was given, and if that is not articulated by defense counsel as a witness, can we consider that? You can because Strickland is an objective standard. Whatever subjective ideas or whatever subjective considerations this particular trial attorney had, while relevant, are not dispositive. So if Strickland is an objective standard, then you look at it objectively. From an objective perspective, having a juror who's got a family member sitting in prison for killing somebody is probably somebody you want as a case. Mr. Ross, just to follow up on some questions that were asked, and I don't know that you've done this intentionally, but wasn't there... I'm going to ask you this question as to whether or not this was a reasonable basis for keeping the juror. I mean, the fact of the matter is that the defendant in this case was an African-American. There was some evidence with respect to whether or some indication that the officer in this case may have engaged in racial profiling, and I guess that begs the question of whether or not the lawyer in this case would have acted reasonably in thinking, particularly since there didn't appear to be many, if any, African-American members of the jury that may have been one other, whether the injection of race in this case was an appropriate consideration for the lawyer to consider in deciding whether or not to keep the juror. I think there's a distinction between considering race in a peremptory strike and considering race in the jurors that you already have called. You're correct. Mr. Bryant believed he'd been racially profiled in that stop, and trial counsel at PCR testified that one of his strategies was to attempt to elicit an explanation for why Mr. Bryant murdered or relied. And one reason given to him by his client was that he thought he was racially profiled. And this trial counsel had committed to that strategy during the guilt phase. So before the solicitor moved to have her withdrawn, the trial counsel is cross-examining the eyewitnesses that are saying he ran the stop sign pretty heavily. And because he's already committed to that strategy, he's quite clear in his testimony, and I'd like to bring it to the court's attention, that DCF 69-12, page 66, and then 75-78, as well as 1067 and 68 of the joint appendix. Trial counsel is quite clear that he doesn't understand, based on his perspective, his life experience, what it's like to be African American and feel you got stopped by the police. But it's reasonable that somebody that has lived that experience may be more sympathetic to his case. And this isn't a situation where there's pernicious... race is injected perniciously. He's simply trying to get a fair cross-section of the community on his jury panel so that his mitigating grounds can get a fair hearing. So I don't think that's improper, and I would point the court's attention to the Weatherwax case, where the Second Circuit made that distinction between considering race in a peremptory challenge versus understanding the jury you have and trying to keep a favorable demographic on your jury panel. Because trial attorneys have to base their strategies on probability. It's not unreasonable to assume that this juror is likely more probable than that. Counsel, it's Judge Harris. So the district court agreed with you on that point, right? The district court is very clear in finding ineffective assistance. I'm not saying it was impermissible to consider race, to have a strategy that took that into account. So you've got no quarrel with the district court on that. You won that point. The district court went on to say, notwithstanding that, given the nature of a mitigation case where the whole thing turns on how a juror is going to respond to this very subjective evidence about the value of a human life, you just can't decide to have a juror who can't hear your mitigation case. So notwithstanding all of what the district court viewed as sort of legitimate strategic considerations, the district court concluded, look, this is just not a reasonable strategic decision, particularly in the context of a mitigation case where you just don't know which detail, which fact is going to resonate emotionally with the juror to encourage that juror to vote for life. You just can't put on a juror who you know is not going to hear a lot of what your witnesses are saying. So can you address that part of the district court's holding? Well, he didn't know that she couldn't hear. Okay. So this is basically just a... I don't mean to put... So this is just... I'm sort of a... It's the same merits argument as to both. Both as to ineffective assistance and as to due process. You would just say, look, she could hear enough. I would say there is a subtle distinction that Strickland makes clear to base the actions on what he thought at the time. What he thought at the time was that this juror's hearing impairment wasn't a problem. It certainly wasn't a problem to remove a juror that's going to be favorable. Again, he's testifying that he only understood the extent of the impairment after he read the transcript, which is the initial point. Mr. Ross, can I... Oh, sorry. Judge Moss, go ahead. Can I ask you a follow-up question to that? If... I know this isn't what you were saying, but if it was conceded that this juror could not hear, would it be ineffective assistance of counsel to put him on the jury? Number one, again, you can't... We will not make that concession that the juror... I understand. Did you hear the first part of my question? I understand you're not making the concession. You're not making the concession. If this juror could not hear, would defendant's counsel have committed ineffective assistance if I couldn't find reason for him to be on the jury? What? I think you would have to know how much she could hear. Are you saying completely deaf? Well, let's start with completely deaf. Well, I think there's a wide range...  I'm sorry, Your Honor. I don't think this is a hard question. If the juror is deaf, is the defendant's lawyer guilty of ineffective assistance by permitting him to be on the jury, but not asking to have him struck? I think trial counsel would have wide latitude, strictly... I don't think... No. No, Your Honor. I do not think... Well, now I understand your position. Great. Because of... Wide range of what's reasonable under strict... Right, and having a deaf juror on is reasonable in a case in which there is testimony, particularly in the mitigation case, which everybody... No one says that there was a lock there. Everybody agrees that there was mitigation evidence, but it would still be reasonable to have somebody deaf who might pick out one particular part of the mitigation evidence, as my colleague said, and find it significant. But that wouldn't be ineffective assistance of counsel to let that deaf person sit on the jury. Not every deaf person is the same. Some can read lips. Some are going to be inclined to support your position. It's... I do understand that, but I'm hypothesizing. I know you don't think this is the case, that this juror, that the juror in my question is deaf. And I'm asking you, if the defendant's lawyer would be guilty of ineffective assistance if he permitted a deaf juror to sit on the sentencing part of the case. No, because that is a... No, I'm sorry, I still didn't hear you. No? No, and that is because that is a black and white question. Practicing law involves judgment that is not black and white. All right. Are there further questions? If not, thank you, counsel. And Ms. Vann, I note that you're a court appointed, and I want to give you a special thanks on behalf of the court. We appreciate lawyers like yourself who take these cases and help us on these very difficult cases. We appreciate it very much. And Mr. Ross, we thank you for ably representing the Parliament House today. Thank you. We can't come... Thank you. You're welcome. We can't come down and greet you like we'd like to, but nonetheless, we really appreciate you being here. We wish you to be safe and stay well. And thank you so much, counsel. Thank you, you too. All right. Bye. Take care. Bye-bye.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing